John J. Hebert (#010633)
Philip R. Rudd (#014026)
Wesley D. Ray (#026351)
**POLSINELLI PC**
One E. Washington, Suite 1200
Phoenix, AZ 85004
Telephone: (602) 650-2000
Facsimile: (602) 264-7033
E-Mail: jhebert@polsinelli.com
E-Mail: prudd@polsinelli.com
E-Mail: wray@polsinelli.com

*Proposed Attorneys for Debtors*

**IN THE UNITED STATES BANKRUPTCY COURT**

**THE DISTRICT OF ARIZONA**

| In re: | Chapter 11 Proceedings |
|---|---|
| DELTA MECHANICAL INC.<br>NEVADA DELTA MECHANICAL, INC.<br>CD PLUMBING INC.<br>ARIZONA DELTA MECHANICAL, INC.<br>CALIFORNIA DELTA MECHANICAL, INC.<br>GEORGIA DELTA MECHANICAL, INC.<br>NEW MEXICO DELTA MECHANICAL, INC.<br>COLORADO DELTA MECHANICAL INC.<br>CAROLINA DELTA MECHANICAL, INC.<br>MICHIGAN DELTA MECHANICAL, INC.<br>FLORIDA DELTA MECHANICAL, INC.<br>TEXAS DMI, INC.<br>DELTA MECHANICAL, INC.,<br><br>        Debtors.<br><br>This filing applies to:<br><br>☒ A<small>LL</small> D<small>EBTORS</small><br><br>☐ S<small>PECIFIED</small> D<small>EBTORS</small> | Case No. 2:15-bk-13316-GBN<br>Case No. 2:15-bk-13327-DPC<br>Case No. 2:15-bk-13328-DPC<br>Case No. 2:15-bk-15330-EPB<br>Case No. 2:15-bk-13331-DPC<br>Case No. 2:15-bk-13332-EPB<br>Case No. 2:15-bk-13334-PS<br>Case No. 2:15-bk-13335-SHG<br>Case No. 2:15-bk-13336-EPB<br>Case No. 2:15-bk-13338-BKM<br>Case No. 2:15-bk-13339-MCW<br>Case No. 2:15-bk-13341-BMW<br>Case No. 2:15-bk-13342-DPC<br><br>Joint Administration Pending Under<br>Case No. 2:15-bk-13316-GBN<br><br>**DECLARATION OF CRAIG WILLETT IN SUPPORT OF THE DEBTORS' FIRST DAY MOTIONS** |

I, Craig Willett, under penalty of perjury, declare as follows:

1. I am an adult resident of Maricopa County, Arizona.

2. I am of sound mind and make this declaration of my own free will.

3. Except as otherwise indicated herein, the following statements are based upon my personal knowledge.

4. I am the President and CEO of Elizann, Inc. ("Elizann").

5. In May of 2015, I, through Elizann, was engaged as a consultant to provide financial, accounting, management, and operational advice and assistance to Delta Mechanical Inc., an Arizona corporation, Nevada Delta Mechanical, Inc., CD Plumbing Inc., Arizona Delta Mechanical, Inc., California Delta Mechanical, Inc., Georgia Delta Mechanical, Inc., New Mexico Delta Mechanical, Inc., Colorado Delta Mechanical Inc., Carolina Delta Mechanical, Inc., Michigan Delta Mechanical, Inc., Florida Delta Mechanical, Inc., Texas DMI, Inc., and Delta Mechanical, Inc., a Hawaii corporation (the "Debtors").

6. Through my engagement with the Debtors, I have spent considerable time with the Debtors' management, reviewed a large array of contracts and financial information relating to the Debtors' business, and conferred and negotiated with a bevy of the Debtors' creditors, vendors, and customers.

7. I am very familiar with the Debtors' operations and financial affairs.

8. I have reviewed, and make this declaration in support of, the following motions (collectively, the "First-Day Motions") filed by the Debtors:

    a. The *Motion to Authorize the Interim Use of Cash Claimed as Collateral and to Determine that Certain Post Petition Revenues are Not Cash Collateral* ("Cash Collateral Motion");

    b. The *Motion to Authorize Payment of Pre-Petition Wages, Commissions and Reimbursements* ("Wage Motion");

    c. The *Motion to Determine Adequate Assurance of Utilities and to Establish Procedures for the Resolution of Related Disputes* ("Utilities Motion"); and

    d. The *Motion to Authorize the Debtors' Continued Use of Existing Cash Management System and Business Forms* ("Cash Management Motion").

## GENERAL INFORMATION

9. On October 19, 2015, the Debtors filed their voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Arizona.

10. Based upon my conversations with management, it is my understanding that Debtor Delta Mechanical, Inc. has been in business for more than twenty-eight years.

11. The Debtors are engaged, generally, in the installation, maintenance, and repair of plumbing, heating, ventilation, and air conditioning fixtures and equipment.

12. The Debtors, collectively, operate in 13 states.

13. The Debtors employ a fleet of approximately 200 service vehicles, and are authorized service providers for more than 400 Home Depot stores.

14. In 2014, the Debtors, collectively, generated in excess of $55,000,000 in gross revenues.

## CASH COLLATERAL

15. In order to continue operations and preserve the value of their respective bankruptcy estates during these bankruptcy proceedings, it is necessary for the Debtors to use their cash-on-hand and the income derived from post-petition operations to pay the Debtors' ordinary and necessary expenses.

16. The Debtors aggregate projected income (the "Income") and expenses (the "Expenses") for the next ninety days are identified in the budget attached to the Cash Collateral Motion as Exhibit "A" (the "Budget").

17. I believe that the revues projected in the Budget are reasonable, and the expenses identified in the Budget are reasonable and necessary.

18. Upon information and belief, based upon pre-petition agreements and assessments, I suspect that the Internal Revenue Service, BMO Harris Bank, and Gateway Bank (collectively, the "Creditors") may assert a security interest in the Debtors' cash, inventory, and accounts receivable.

19. The Debtors have not had sufficient time to determine the validity, priority, enforceability, or extent of any lien asserted by the Creditors, or any other party.

20. It is crucial for the Debtors to have the use of the Income to operate and maintain their business in order to preserve its going-concern value while the Debtors formulate and implement a plan of reorganization.

21. I believe that the Debtors' business operations and reorganization efforts would suffer immediate and irreparable harm if the Debtors are not allowed to use the Income to pay the Expenses.

22. Based upon the Budget, I believe that, so long as the Debtors are permitted to use the Income to pay the Expenses, any interests the Creditors may hold in the Debtors' cash-on-hand, inventory, or receivables will be adequately protected through the Debtors' ongoing operations and the provision, if necessary, of a replacement lien, as described in the Cash Collateral Motion.

## EMPLOYEE AND CONTRACTOR COMPENSATION

23. The Debtors, collectively, have approximately 350 employees and contractors (without making any admission as to legal characterization, employees and contractors shall hereinafter be referred to, without distinction, as the "Employees").

24. The Debtors' payroll system is based upon bi-weekly alternating pay periods. Meaning that each Friday is the end of a two-week pay period, but only as to one of the two components of the Debtors' work force.

25. Payments to Employees are generally made the Friday following the end of their respective pay period.

26. As such, in the ordinary course of their business, the Debtors next payroll will occur on October 23, 2015.

27. Certain of the Employees are paid an annual salary, certain of the Employees are paid on an hourly basis, and certain of the Employees are paid commissions for services rendered and sales consummated.

28. Certain of the Employees receive their compensation by way of direct deposit, while others receive paper checks.

29. All payroll funds are disbursed to the Employees directly from a single payroll account.

30. In addition to wages, commissions, and benefits, the Debtors provide reimbursement of business-related expenses to their principal and certain of the Employees.

31. As part of their compensation, and in accordance with the Debtors' established policies, the Employees also accrue paid time off ("PTO").Except as may otherwise be required by law, PTO is honored on an ongoing basis in accordance with the Debtors' policies, and only redeemable for cash in the event of a termination of an Employee that has been employed by the Debtors for more than a year.

32. As of the Petition Date, there existed approximately $535,118 in earned but unpaid wages and commissions owing to the Employees

33. As of the Petition Date, 43 reimbursement requests, aggregating to $11,376, had been received, and upon review, approved by the Debtors.

34. As of the Petition Date, the Debtors current books and records reflected the Employees, collectively, having accrued 7,054 hours of PTO.

35. The greatest combined amount of earned pre-petition wages, commissions, and reimbursements due to any Employee is $6,259.

36. Based upon my conversations with the Debtors' Chief Executive Officer, and my understanding of the Debtors' business, I believe that if the Employees are not promptly and fully paid for their pre-petition employment, a meaningful number of Employees will terminate their employment with the Debtors.

37. Based upon my conversations with the Debtors' Chief Executive Officer, and my understanding of the Debtors' business, I believe that the loss of any meaningful portion of the Employees would materially harm the Debtors' operations and reorganization efforts.

**UTILITY PROVIDERS**

38. In the course of their business, the Debtors receive electricity, water, gas, telephone, and other services from several utility companies (the "Utilities").

39. A schedule showing the accounts maintained by the Debtors with each of the Utilities is attached to the Utilities Motion as Exhibit "A."

40. To the best of my knowledge, based upon the Debtors' books and records, none of the Utilities is currently holding a pre-petition deposit.

41. Based upon my understanding of the Debtors' business, the services provided by the Utilities are absolutely essential to the Debtors' operations.

42. It is my opinion that any disruption in the provision of utility service would significantly harm the Debtors' ability to generate revenue, and, therefore, their prospects for reorganization

## CASH MANAGEMENT AND BUSINESS FORMS

43. To manage the receipts and payments involved in their extensive operations, the Debtors employ a sophisticated cash-management system.

44. The Debtors maintain approximately eighteen separate bank accounts (collectively the "<u>Bank Accounts</u>").

45. The Debtors' Bank Accounts are listed and described in Exhibit "A" to the Cash Management Motion, and are generally used as follows:

    a. <u>Primary Account – Account No. XXXX6872:</u> - This account is Debtors' principal Bank Account. All of the money generated by the Debtors' operations is ultimately deposited in this account, and all payments made by the Debtors originate from this account. Certain of the Debtors' revenues are deposited directly into this account, while others are deposited into another of the Bank Accounts and subsequently transferred, in most cases automatically, into this account. Likewise, all of the Debtors' payables are either processed directly through this account, or the necessary funds are transferred from this to another of the Bank Accounts for distribution to appropriate payees.

    b. <u>Payroll Account – Account No. XXXX6883:</u> This account is used for the processing of all of the Debtors' payroll obligations. For those employees who have enrolled in the Debtors' direct deposit program, wages are transferred out of this account via ACH each Wednesday. Employees who have not enrolled in the

Debtors' direct deposit program receive paper checks drawn on this account each Friday. The Debtors' payroll taxes are transferred, via ACH, from this account each Friday.

      c.    <u>Various Operating Accounts</u> – Certain of the Debtors maintain separate operating accounts. These accounts are used to pay vendors and general operating expenses incurred by the Debtor for whom the account is maintained.

      d.    <u>Various Purchasing Accounts</u> – Certain of the Debtors maintain separate purchasing accounts. These Accounts are used to purchase inventory and equipment necessary to the Debtor for whom the account is maintained.

      e.    <u>Various Permit Accounts</u> – Certain of the Debtors perform work that requires a permit from a local regulatory agency. For those projects, it is often necessary or desirable for the payment necessary to obtain such permits to be paid by check and in person. For this reason the Debtors have established permit accounts that can be accessed by personnel in the states in which each Debtor performing permitted services operates.

46. The Bank Accounts are maintained at BMO Harris Bank and, upon information and belief, insured by the Federal Deposit Insurance Corporation.

47. On a frequent basis, cash is moved between the Debtors' Primary Account and their affiliated accounts through a series of automated sweeps and transfers.

48. The closure of any of the Bank Accounts could interrupt the automated transfer of funds amongst the Bank Accounts, and therefore disrupt the Debtors' ability to access cash to satisfy its operational obligations.

49. The Debtors' primary source of revenue, Home Depot, makes automated payments to the Debtors' Primary Account four times per week.

50. The Debtors are currently using debit cards connected to the Bank Accounts to purchase approximately $400,000 worth of critical parts and equipment per week.

51. In my opinion, a closure of the Bank Accounts would cause disruption in the automated payments received from Home Depot and the debit card transactions by which the Debtors are acquiring inventory and equipment.

52. Given the Debtors' financial condition, any delay in the receipt of payment or the purchasing of necessary inventory and equipment could have disastrous effects.

53. The Bank Accounts, and the manner in which funds move between them, are intimately related to the Debtors' accounting and reporting systems.

54. In addition to the above-referenced cash-management system, the Debtors use an extensive array of business forms upon which its logo and corporate information is embossed or printed including, but not limited to, checks, invoices, letterhead, business cards, and work orders.

55. The replacement of these business forms would entail a substantial and unnecessary expenditure of Debtors' limited resources.

## **CONCLUSION**

56. I believe that the Court's granting of the First Day Motions would facilitate the Debtors' ongoing operations and promote their ability to successfully reorganize.

By: /s/ *Craig Willett (with permission)*
    Craig Willett

**COPY** of the foregoing mailed (or served via electronic notification if indicated by an "*") on October 19, 2015, to:

U.S. TRUSTEE'S OFFICE
230 N. 1st Avenue, Suite 204
Phoenix, AZ 85003

By: */s/ Mary Engel*